IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

CASE NUMBER: 2:16-cv-01943-DCN

| | |
|---|---|
| Penn-America Insurance Company,<br><br>                         Plaintiff,<br><br>v.<br><br>BWR, Inc., on its own behalf and d/b/a Big Water Resort, M.B. Hutson a/k/a M.B. Hudson;<br><br>Big Water Resort, LLC, TLC Holdings, LLC, Richard Clark, Jimmy S. Lovell a/k/a Jimmy "Steve" Lovell, James Thigpen, Ocoee, LLC;<br><br>William Reed, Donna Reed, Bonnie Youmans, Jane Yates, and Phillip Caulder, all individually and for the benefit and on behalf of all others similarly situated,<br><br>                         Defendants. | **COMPLAINT**<br>**(Declaratory Judgment)**<br>**(Non-Jury)** |

The Plaintiff seeks declaratory relief to determine the rights of the parties. Plaintiff, Penn-America Insurance Company ("Penn-America"), complaining of the Defendants above-captioned, would respectfully allege and show as follows:

## BACKGROUND

This action seeks declarations as to liability coverage for two underlying lawsuits. These lawsuits, in turn, relate to a series of other lawsuits in federal and state courts in the protracted litigation surrounding the Big Water Resort campground near Summerton, South Carolina.

## JURISDICTION and PARTIES

1. Penn-America is a corporation organized and existing under the laws of the State of Pennsylvania with its principal place of business in Pennsylvania; Penn-America is authorized to transact business and write insurance policies in the State of South Carolina.

1

2. Upon information and belief, Defendant BWR, Inc. is or was a corporation organized and existing under the laws of the State of South Carolina with its principal place of business in South Carolina.

3. Upon information and belief, Defendant M.B. Hutson a/k/a M.B. Hudson (hereinafter "HUTSON") is a citizen and resident of Orangeburg County, South Carolina

4. Upon information and belief, Defendant Big Water Resort, LLC is a limited liability company organized and existing under the laws of the State of South Carolina with its principal place of business in South Carolina.

5. Upon information and belief, Defendant TLC Holdings, LLC is a limited liability company organized and existing under the laws of the State of South Carolina with its principal place of business in South Carolina.

6. Upon information and belief, Defendant Richard Clark is a citizen and resident of Tennessee.

7. Upon information and belief, Defendant Jimmy S. Lovell a/k/a Jimmy "Steve" Lovell is a citizen and resident of Florida.

8. Upon information and belief, Defendant James Thigpen is a citizen and resident of the State of South Carolina.

9. Upon information and belief, Defendant Ocoee, LLC is a limited liability company organized and existing under the laws of the State of South Carolina with its principal place of business in South Carolina.

10. Upon information and belief, Defendant William Reed is a citizen and resident of Charleston County, South Carolina.

11. Upon information and belief, Defendant Donna Reed is a citizen and resident of Charleston County, South Carolina.

12. Upon information and belief, Defendant Bonnie Youmans is a citizen and resident of Colleton County, South Carolina.

13. Upon information and belief, Defendant Jane Yates is a citizen and resident of Florence County, South Carolina.

14. Upon information and belief, Defendant Phillip Caulder is a citizen and resident of Beaufort County, South Carolina.

15. This action is brought under the provisions of the Federal Declaratory Judgment Act, 28 U.S.C. § 2201 et seq. and Rule 57, Fed. R. Civ. P.; there is a real and justiciable controversy between the parties, and by these proceedings Penn-America asks this Court to inquire into and declare the rights and obligations of the parties hereto arising out of the facts set forth below.

16. The amount in controversy exceeds Seventy Five Thousand and No/100 ($75,000.00) Dollars, exclusive of interests and costs, and there is complete diversity of citizenship; therefore, this Court has jurisdiction to hear this matter under 28 U.S.C. § 1332(a)(1).

## THE POLICY

17. Penn-America issued commercial general liability (CGL) policy number PAC7045167 to "BWR, Inc. d/b/a Big Water Resort" as the named insured. The policy was in effect from October 16, 2013 through October 16, 2014. Penn-America craves reference to the policy for all of the terms, conditions, and provisions therein and incorporates them by reference herein. A copy of this policy (hereinafter "the Policy") is attached as Exhibit A.

18. On the declarations page for the Policy indicates that the named insured's form of business is "corporation."

19. On the first page of Form CG 0001 04 13 of the policy, entitled "Commercial General Liability Coverage Form," the policy specifies that the terms "you" and "your" in the policy mean "the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under the policy."

20. Under Section II – Who Is An Insured, paragraph 3. on page 10 of this coverage form, organizations newly acquired or formed by the named insured may qualify as a Named Insured under certain circumstances.

21. On the first page of Form CG 0001 04 13, the policy defines "insured" as "any person or organization qualifying as such under Section II – Who Is An Insured."

22. "BWR, Inc. d/b/a Big Water Resorts," as the named insured, qualifies as an insured under Paragraph II.1d. of Form CG 0001 04 13.

23. The Policy specifies that "executive officers" and directors of the named insured are insureds, but only with respect to their duties as officers and directors. The Policy defines "executive officers" as "person(s) holding any of the officer positions created by your charter, constitution, bylaws or any other similar governing document." The Policy further specifies that stockholders of the named insured are insureds, but only with respect to their liability as stockholders.

24. Paragraph II.2.a. of Form CG 0001 04 13 specifies that employees of the named insured are insureds, "but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business."

4

25. The final paragraph of Section II – Who Is An Insured in this Form provides as follows:

> No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

26. For those defined as insureds, the Policy provides liability coverage for certain risks under the insuring agreements, and excludes certain risks through policy exclusions.

27. The Insuring Agreement for Coverage A on page 1 of Form CG 0001 04 13 extends liability coverage to insureds for claims for damages because of "bodily injury" or "property damage" to which the Policy applies. The Policy defines "bodily injury" as "bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time." "Property damage" is defined to include physical injury to tangible property and loss of use.

28. The Policy only covers "bodily injury" and "property damage" caused by an "occurrence," which is defined as an accident. The "bodily injury" and "property damage" must have occurred during the policy period.

29. Coverage B of the Policy extends liability coverage to insureds for claims for "personal and advertising injury" to which the Policy applies. The Policy applies only to "personal and advertising injury" caused by an offense arising out of the named insured's business. "Personal and advertising injury" is defined to include only certain offenses, including V.14.d. "Oral or written publication, in any manner, of material that slanders or libels a person . . . ."

30. Coverage B of the Policy contains Exclusion 2.a. Knowing Violation Of Rights Of Another, which excludes coverage for "Personal and advertising injury" caused by or at the

5

direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury."

31.     Coverage B of the Policy contains Exclusion 2.b. Material Published With Knowledge Of Falsity, which excludes coverage for "Personal and advertising injury" arising out of oral or written publication, in any manner, of material, if done by or at the direction of the insured with knowledge of its falsity.

32.     Coverage B of the Policy contains Exclusion 2.f. Breach Of Contract, which excludes coverage for "Personal and advertising injury" arising out of a breach of contract . . . ."

## THE UNDERLYING REED CLASS ACTION

33.     Upon information and belief, Defendants WILLIAM REED, DONNA REED, BONNIE YOUMANS, JANE YATES, AND PHILLIP CAULDER filed a class action in the United Stated District Court for the District of South Carolina, Charleston Division styled as follows: Reed v. Big Water Resort, LLC, *et al.*, Civil Action number 2:14-1583-DCN-MGB ("the Underlying Reed Class Action"). A copy of the First Amended Complaint in the Underlying Reed Class Action is attached as Exhibit B. All of the allegations in the First Amended Complaint in the Underlying Reed Class Action are incorporated herein by reference.

34.     The defendants in the Reed Class Action include Defendants BIG WATER RESORT, LLC; TLC HOLDINGS, LLC; RICHARD CLARK; JAMES THIGPEN; JIMMY "STEVE" LOVELL; and OCOEE, LLC.

35.     The plaintiffs in the Underlying Reed Class Action alleged that BIG WATER RESORT, LLC, CLARK, THIGPEN, LOVELL, and TLC HOLDINGS, LLC (hereinafter collectively "the Joint Venture parties") entered into a joint venture for the common purpose of selling memberships in Big Water Resort.

6

36. As alleged, BIG WATER RESORTS, LLC was the marketing arm of this venture; defendant TLC HOLDINGS, LLC owned the land; and defendants CLARK, THIGPEN, and LOVELL provided the funding for the joint venture.

37. The plaintiffs in the Underlying Reed Class Action further alleged they purchased memberships in Big Water Resort for $8,400 per membership for what was held out to be a lifetime membership in an exclusive private club.

38. As alleged, BIG WATER RESORT, LLC breached its contract with the plaintiffs in the Underlying Reed Class Action by converting the Big Water Resort from a private club to a public facility, thus rendering the class plaintiffs' memberships nearly valueless, and/or by ceasing operations.

39. The plaintiffs in the Underlying Reed Class Action alleged that the Joint Venture parties are all liable for BIG WATER RESORT, LLC's breach of contract because they all entered into a joint venture and/or amalgamation of interests.

40. Defendants CLARK, THIGPEN, and LOVELL are allegedly owners of TLC HOLDINGS, LLC and owners, managers, and/or members of BIG WATER RESORT, LLC.

41. The plaintiffs in the Underlying Reed Class Action also alleged that the Joint Venture parties breached their fiduciary duties by transferring BIG WATER RESORT, LLC to HUTSON when they knew or should have known the entity was insolvent and HUTSON did not have the wherewithal to continue operations.

42. Defendants TLC HOLDINGS, LLC, CLARK, THIGPEN, LOVELL, and OCOEE, LLC in the Underlying Reed Class Action filed an Answer and Third-Party Complaint against HUTSON asserting a single cause of action for equitable indemnity.

43. The basis for the equitable indemnity cause of action is that from December 2010 until April 2014, HUTSON was solely responsible for the operation of the Big Water Resorts campground. As alleged, HUTSON vacated the Big Water Resorts property in April 2014, and TLC HOLDINGS, LLC, CLARK, THIGPEN, and LOVELL were able to resume control and operation of the campground at that time.

44. On or about February 1, 2016, the plaintiffs in the Underlying Reed Class Action settled with the direct defendants. In its Order preliminarily approving the settlement, the Court found that: (a) BIG WATER RESORT, LLC was responsible for the daily operations and marketing of the Big Water Resort club; (b) CLARK, THIGPEN, and LOVELL are the sole members of TLC HOLDINGS, LLC and BIG WATER RESORTS, LLC; and (c) TLC HOLDINGS, LLC owns the property upon which the Big Water Resort is situated.

45. On May 20, 2016, the court granted the defendant / third-party plaintiffs' motion for summary judgment as to HUTSON'S counterclaims against them. However, the court denied the defendant / third party plaintiffs' motion for summary judgment on their equitable indemnity cause of action against HUTSON, thus allowing this claim to go forward.

## THE UNDERLYING LIBEL ACTION

46. On December 27, 2015, TLC HOLDINGS, INC., CLARK, and LOVELL filed an action in state court asserting a single cause of action for libel. This action was styled as <u>TLC Holdings, LLC, et al. v. M.B. Hutson a/k/a M.B. Hudson</u>, Civil Action No. 2015-CP-14-00615 (hereinafter "the Underlying Libel Action"). A copy of the Complaint in this action is attached as Exhibit C.

47. The Complaint in the Underlying Libel Action alleges that on December 18, 2013 HUTSON made certain defamatory statements regarding TLC HOLDINGS, LLC and its

8

principals. In a postcard he distributed to all current and former members of Big Water Resort, HUTSON allegedly stated he was "scammed" by TLC HOLDINGS, LLC and its principals in that TLC HOLDINGS, LLC sold memberships in the Big Water Resort club without any intention of following through on its end of the bargain. HUTSON allegedly further stated in the postcard that he intended to file a class action lawsuit against TLC HOLDINGS, LLC demanding a refund of his membership dues, and encouraged the recipients of the postcards to join him in the lawsuit.

48. The Complaint in the Underlying Libel Action further alleges that in April 2014, a class action was filed against TLC HOLDINGS, LLC, its principals, and BIG WATER RESORT, LLC alleging that they breached the membership contracts, defrauded the campground members, and siphoned funds from the resort.

49. Upon information and belief, the class action alleged in the Underlying Libel Action refers to the above-referenced Underlying Reed Class Action.

50. The prayer in the Underlying Libel Action is for actual and punitive damages, as well as attorney's fees, costs, and pre-judgment interest.

51. The Underlying Libel Action was removed to federal court under Case number 2:16-cv-00003-DCN-MGB. On March 3, 2016, the case was remanded back to state court where it is currently pending.

## OTHER RELATED LITIGATION AND TIMELINE

52. In both the Underlying Libel Action and the Underlying Reed Class Action, TLC HOLDINGS, LLC, CLARK, THIGPEN, LOVELL, and OCOEE, LLC alleged that they sold their membership interests in BIG WATER RESORTS, LLC to HUTSON in December 2010, making HUTSON the sole member of BIG WATER RESORTS, LLC. The sale price was

9

financed by a promissory note executed by HUTSON in favor of CLARK, LOVELL, and THIGPEN.  A copy of the Membership Interest Purchase Agreement is attached as Exhibit D.

53. Also in December 2010. TLC HOLDINGS, LLC, CLARK, LOVELL, and THIGPEN (hereinafter "the TLC parties") entered into a Lease-Purchase Agreement with HUTSON in which the TLC parties agreed to sell certain property, including the land upon which Big Water Resorts was located, to HUTSON.  The Lease-Purchase Agreement was also financed by a promissory note.  The Lease-Purchase Agreement provided that a breach of either promissory note would be deemed a breach of the other, thereby permitting the TLC parties to seek recovery under both promissory notes.  A copy of the Lease-Purchase Agreement is attached as Exhibit E.

54. As alleged, HUTSON defaulted on the promissory note(s) and the Lease-Purchase agreement.

55. In December 2011, TLC HOLDINGS, LLC filed an action in state court against HUTSON for breach of the Lease-Purchase Agreement seeking damages and ejectment.  Upon information and belief, this action was styled as TLC Holdings, LLC v. M.B. Hudson, Civil Action number 2011-CP-14-00602.

56. The parties to the TLC Holdings, LLC v Hudson action entered into a Settlement Agreement which was approved by the court in April 2012.  A copy of the Settlement Agreement is attached as Exhibit F.

57. The Settlement Agreement contains the following relevant provisions:

> 4. Pursuant to the Consent Order, in the event that Mr. Hudson fails to comply with the terms of this Settlement Agreement, unless such failure is a direct and proximate result of TLC's failure to perform an action expressly required of it in this Settlement Agreement, time being of the essence, then the Plaintiff is entitled to the following immediate relief, without further order of the court or notice to Defendant or his attorney: (a)

> termination of the [Lease-Purchase] Agreement, . . . immediate vacation of the Property by Mr. Hudson except for his personal residence, which shall be vacated within 15 days, enforceable by the Clarendon County sheriff . . . . Prior to any such default by Hudson hereunder, the parties acknowledge that the Lease[-Purchase Agreement] remains in full force and effect . . . .
>
> * * *
>
> 18.   In the event of any default by Hudson in the payment of amounts owing under this Settlement Agreement, he will be in default of this Settlement Agreement and the [Lease-Purchase] Agreement itself, with no grace period and no right to notice of default, and TLC shall be entitled to the relief set forth in Section 4 above.

58.   The court approval of the Settlement Agreement was by Consent Order dated filed April 13, 2012. A copy of the Consent Order is attached as Exhibit G.

59.   The Consent Order contains the following relevant provisions:

> NOW, THEREFORE, upon Motion of the Plaintiff, and with the consent of the Defendant, as the only parties having appeared in this action, it is hereby
>
> **ORDERED, ADJUDGED AND DECREED** as follows:
>
> 1.   The Settlement Agreement is hereby approved by this Court and incorporated into this Consent Order by this reference;
>
> 2.   In the event that Hudson fails to comply with the terms of the Settlement Agreement, unless such failure is a direct and proximate result of TLC's failure to perform an action expressly required of it in the Settlement Agreement, time being of the essence, then the Plaintiff is entitled to file an Affidavit of Default in this action, without notice to Defendant or his counsel of record, and effectively immediately upon the filing of such Affidavit of Default, Plaintiff is hereby awarded the following immediate relief, without the need for further Order of this Court:
>
>> a)   The [Lease-Purchase] Agreement shall be deemed automatically terminated and of no further force or effect;
>>
>> * * *
>>
>> c)   Mr. Hudson shall be required immediately to vacate the Property, except only with respect to his personal residence located thereon, as to which he shall be obligated to vacate the same within fifteen (15) days following receipt of a copy of the Affidavit of Default . . . . .

11

60. HUTSON defaulted under the terms of the Settlement Agreement and Consent Order. As of December 11, 2013, the TLC parties notified HUTSON that they were exercising their right to terminate the Lease Agreement and filed an Affidavit of Default. Copies of the termination letter and Affidavit are attached as Exhibits H and I.

61. On December 30, 2013 HUTSON filed a motion to set aside the Affidavit of Default and a motion for a temporary restraining order (TRO) alleging that the TLC parties failed to perform an action expressly required of them in the Settlement Agreement.

62. The court granted HUTSON's motion for a TRO on December 30, 2013. The order enjoined the TLC parties from pursuing further remedies under the Affidavit of Default.

63. On January 8, 2014, HUTSON filed a Chapter 11 petition in Bankruptcy Court. Upon information and belief, this action was styled as <u>In re: Morris Beach Hutson a/k/a M.B. Hudson</u>, Case No. 14-00165-jw.

64. The TLC parties argued that the Bankruptcy Court's automatic stay was inapplicable to the Big Water Resorts property because HUTSON's interest in the property terminated with the filing of their Affidavit of Default, and therefore the Big Water Resort property was not included in HUTSON's bankruptcy estate.

65. On February 21, 2014, the Bankruptcy Court issued an order granting limited relief from the automatic stay so the state court could determine what interest HUTSON had in the Big Water Resorts property as of the date he filed for bankruptcy.

66. The state court heard HUTSON's motions and made the following relevant findings and/or rulings:

    (a) The Court refused to rule on HUTSON's argument that he had an equitable interest in the Big Water Resorts property for purposes of his bankruptcy estate because he did not make that argument in his motions pending before the state court;

    (b) HUTSON defaulted under the terms of the Consent Order and the Settlement Agreement, and these defaults were not the direct and proximate result of TLC HOLDINGS, LLC's failure to perform an action expressly required of it under the Settlement Agreement;

    (c) Pursuant to the terms of the Settlement Agreement and Consent Order, the Lease Agreement was automatically terminated as of December 11, 2013, and HUTSON's rights of possession of the Big Water Resorts property terminated no later than December 18, 2013, when HUTSON acknowledged receipt of the Affidavit of Default.

    (d) HUTSON was ordered to immediately vacate the Big Water Resorts premises according to the terms of the Settlement Agreement and Consent Order.

A copy of the Order dated March 20, 2014 is attached as Exhibit J.

67. HUTSON vacated the Big Water Resorts property on March 26, 2014.

68. HUTSON subsequently withdrew his claim that he had an equitable interest in the Big Water Resorts property and the Bankruptcy action was dismissed on April 8, 2014. Copies of the Bankruptcy Court's Supplemental Order dated April 2, 2014 and its Order dismissing the case are attached as Exhibits K and L.

69. Upon information and belief, BWR, INC. was incorporated on February 28, 2011 and administratively dissolved on September 20, 2013.

70. HUTSON sought liability coverage under the Policy for the claims against him in the Underlying Reed Class Action and the Underlying Libel Action.

71. Penn-America is defending HUTSON in the Underlying Reed Class Action and the Underlying Libel Action under reservation of rights.

## FOR A FIRST DECLARATION

72. The Plaintiff repeats, re-alleges, and incorporates paragraphs 1 through 71 as if fully set forth herein verbatim.

73. The named insured under the Policy is "BWR, Inc. d/b/a Big Water Resorts," a

13

corporation.

74. No other entity qualifies as a named insured under the Policy.

75. HUTSON is an insured only with respect to his duties on behalf of BWR, Inc. as an officer, director, or employee and/or his liability as a stockholder or member of BWR, Inc.

76. The Policy expressly provides that joint ventures and limited liability companies not listed on the Declarations of the Policy are not insureds.

77. The corporate defendants in the Underlying Reed Class Action lawsuit are BIG WATER RESORT, LLC; TLC HOLDINGS, LLC; and OCOEE, LLC. None of these entities are insureds under the Policy Penn-America issued to BWR, Inc.

78. Therefore, HUTSON is not an insured with respect to his actions on behalf of BIG WATER RESORT, LLC; TLC HOLDINGS, LLC; or OCOEE, LLC.

79. The third-party claim against HUTSON in the Underlying Reed Class Action is based upon his actions as purchaser under the Lease-Purchase Agreement. HUTSON entered into this Agreement in his individual capacity. HUTSON also purchased BIG WATER RESORT, LLC, which operated the campground, in his individual capacity.

80. BWR, INC. is not mentioned anywhere in the pleadings in the Underlying Reed Class Action, and HUTSON is not alleged to be liable as a stockholder of BWR, INC. or to have performed any act on behalf of BWR, INC. for which liability is asserted against him in the Underlying Reed Class Action.

81. Therefore, Penn-America is entitled to a declaration that HUTSON is not an insured with respect to the conduct alleged against him in the Underlying Reed Class Action.

## FOR A SECOND DECLARATION

82. The Plaintiff repeats, re-alleges, and incorporates paragraphs 1 through 81 as if

fully set forth herein verbatim.

83. HUTSON is named as a defendant in his individual capacity in the Underlying Libel Action.

84. BWR, INC. is not named as a defendant or mentioned in the pleadings in the Underlying Libel Action, and HUTSON is not alleged to be liable as a stockholder of BWR, INC. or to have performed any act on behalf of BWR, INC. for which liability is asserted against him in the Underlying Libel Action.

85. The defamatory statement allegedly made by HUTSON in the Underlying Libel Action relates to HUTSON's interests as an investor, and was not made within the course and scope of his duties as a director, officer, or employee of BWR, INC.

86. Pursuant to the Settlement Agreement and the Consent Order in the <u>TLC Holdings, LLC v Hudson</u> action, HUTSON's interest in the Big Water Resort campground automatically terminated prior to the date of the alleged defamatory statement in the Underlying Libel Action.

87. BWR, INC. as an incorporated entity did not exist as of the date the defamatory statement was allegedly made in the Underlying Libel Action.

88. Therefore, Penn-America is entitled to a declaration that HUTSON is not an insured with respect to the conduct alleged against him in the Underlying Libel Action.

### FOR A THIRD DECLARATION

89. The Plaintiff repeats, re-alleges, and incorporates paragraphs 1 through 88 as if fully set forth herein verbatim.

90. Coverage A of the Policy only covers claims for "bodily injury" or "property damage" caused by an "occurrence," as these terms are defined.

15

91. The plaintiffs in the Underlying Reed Class Action did not allege physical injury to tangible property or loss of use of tangible property caused by an accident. Their claims are for economic loss they suffered because of the business practices of the defendants in that action.

92. The third-party claim against HUTSON for equitable indemnification does not seek recovery for "bodily injury" or "property damage" caused by an "occurrence." The defendants / third-party plaintiffs seek indemnification from HUTSON for damages awarded against them based upon the claims by the plaintiffs in the Underlying Reed Class Action.

93. Therefore, Penn-America is entitled to a declaration that Coverage A of the Policy does not provide coverage for the claims asserted in the Underlying Reed Class Action even if HUTSON is found to be an insured for purposes of the claims asserted against him in that lawsuit.

## FOR A FOURTH DECLARATION

94. The Plaintiff repeats, re-alleges, and incorporates paragraphs 1 through 93 as if fully set forth herein verbatim.

95. Coverage B of the Policy only covers claims for "personal and advertising injury" as defined. The Policy defines "personal and advertising injury" to include only specified offenses.

96. The third-party claim against HUTSON for equitable indemnification in the Underlying Reed Class Action is not included among the specified offenses in the definition of "personal and advertising injury."

97. Therefore, the Plaintiff is entitled to a declaration that Coverage B of the Policy does not provide coverage for the claims against HUTSON in the Underlying Reed Class Action, and therefore, coverage does not exist under the Policy for any of the claims asserted against him

in the Underlying Reed Class Action.

## FOR A FIFTH DECLARATION

98. The Plaintiff repeats, re-alleges, and incorporates paragraphs 1 through 97 as if fully set forth herein verbatim.

99. The plaintiffs in the Underlying Libel Action did not allege "bodily injury" or "property damage" caused by an "occurrence."

100. Penn-America is entitled to a declaration that coverage does not exist under Coverage A of the Policy for the claims asserted against HUTSON in the Underlying Libel Action even if he is found to be an insured for purposes of the claims asserted against him in that lawsuit.

## FOR A SIXTH DECLARATION

101. The Plaintiff repeats, re-alleges, and incorporates paragraphs 1 through 100 as if fully set forth herein verbatim.

102. Coverage B of the Policy excludes coverage for "personal and advertising injury" "caused by or at the direction of the insured with knowledge that the act would violate the rights of others and inflict 'personal and advertising injury.'"

103. Penn-America is entitled to a declaration that to the extent the claims against HUTSON in the Underlying Libel Action are for knowing violation of the plaintiffs' rights, coverage does not exist for these claims, even if HUTSON is found to be an insured for purposes of the claims asserted against him in that lawsuit.

## FOR A SEVENTH DECLARATION

104. The Plaintiff repeats, re-alleges, and incorporates paragraphs 1 through 103 as if fully set forth herein verbatim.

105. Coverage B of the Policy excludes coverage for "personal and advertising injury" "arising out of oral or written publication, in any manner, of material, if done by . . . the insured with knowledge of its falsity."

106. Penn-America is entitled to a declaration that to the extent the claims against HUTSON in the Underlying Libel Action are for material published with knowledge of falsity, coverage does not exist for these claims, even if HUTSON is found to be an insured for purposes of the claims asserted against him in that lawsuit.

## FOR AN EIGHTH DECLARATION

107. The Plaintiff repeats, re-alleges, and incorporates paragraphs 1 through 106 as if fully set forth herein verbatim.

108. Coverage B of the Policy excludes coverage for "personal and advertising injury" arising out of a breach of contract.

109. Penn-America is entitled to a declaration that to the extent the claims against HUTSON in the Underlying Libel Action are found to arise out of the alleged breach of contract, coverage does not exist for these claims, even if HUTSON is found to be an insured for purposes of the claims asserted against him in that lawsuit.

## FOR A NINTH DECLARATION

110. Plaintiff repeats, re-alleges, and incorporates the preceding paragraphs as if fully set forth herein verbatim.

111. Plaintiff is entitled to a declaration that it has no duty to defend or indemnify HUTSON in either the Underlying Reed Class Action or the Underlying Libel Action because coverage does not exist under the Policy for these claims.

WHEREFORE, Plaintiff requests that this honorable Court inquire into these matters and

declare that the Penn-America policies do not provide coverage for the damages alleged to have been caused by the acts of HUTSON, and that therefore, Plaintiff does not owe HUTSON a defense or indemnification in the Underlying Reed Class Action or the Underlying Libel Action for the claims asserted him, together with its costs and disbursements incurred and such other and further relief as the Court may deem just and proper.

        Respectfully submitted,

        MURPHY & GRANTLAND, P.A.

        s/J.R. Murphy
        J. R. Murphy, Esquire (Fed. I.D. #3119)
        Timothy J. Newton, Esquire (Fed. I.D. #9807)
        4406-B Forest Drive (29204)
        Post Office Box 6648
        Columbia, South Carolina 29260
        (803) 782-4100
        Attorneys for Plaintiff Penn-America Insurance Company

Columbia, South Carolina
June 14, 2016